FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TANYA W., | No. 1:17-cv-03134-FVS |
|                  Plaintiff, | |
| | REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|    vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
|                  Defendant. | |
| | ECF Nos. 12, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 16. This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 18. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 12) be granted and Defendant's Motion (ECF No. 16) be denied.

REPORT AND RECOMMENDATION - 1

1

## JURISDICTION

2    The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3    1383(c)(3).

4

## STANDARD OF REVIEW

5    A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

7    limited; the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

9    1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

10   reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

11   (quotation and citation omitted). Stated differently, substantial evidence equates to

12   "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

13   citation omitted). In determining whether the standard has been satisfied, a

14   reviewing court must consider the entire record as a whole rather than searching

15   for supporting evidence in isolation. *Id.*

16   In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

18   1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

19   rational interpretation, [the court] must uphold the ALJ's findings if they are

20   supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

REPORT AND RECOMMENDATION - 2

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [she] is not only unable to do [her]

previous work[,] but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in

the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

REPORT AND RECOMMENDATION - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

REPORT AND RECOMMENDATION - 4

1      If the severity of the claimant's impairment does not meet or exceed the

2 severity of the enumerated impairments, the Commissioner must pause to assess

3 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4 defined generally as the claimant's ability to perform physical and mental work

5 activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

6 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

7 analysis.

8      At step four, the Commissioner considers whether, in view of the claimant's

9 RFC, the claimant is capable of performing work that he or she has performed in

10 the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

11 If the claimant is capable of performing past relevant work, the Commissioner

12 must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

13 If the claimant is incapable of performing such work, the analysis proceeds to step

14 five.

15      At step five, the Commissioner considers whether, in view of the claimant's

16 RFC, the claimant is capable of performing other work in the national economy.

17 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

18 the Commissioner must also consider vocational factors such as the claimant's age,

19 education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

20 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

REPORT AND RECOMMENDATION - 5

1    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

2    404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

3    work, analysis concludes with a finding that the claimant is disabled and is

4    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

5         The claimant bears the burden of proof at steps one through four above.

6    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

7    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

8    capable of performing other work; and (2) such work "exists in significant

9    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2);

10   *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

11                                **ALJ'S FINDINGS**

12        Plaintiff applied for Title II disability income benefits and Title XVI

13   supplemental security income on November 13, 2013, alleging an onset date of

14   August 16, 2011.[1]  Tr. 207-14, 226.  The application was denied initially, Tr. 140-

15   43, and on reconsideration, Tr. 148-50, 153-54.  Plaintiff appeared at a hearing

16   before an administrative law judge (ALJ) on November 5, 2015.  Tr. 44-81.  On

17   March 25, 2016, the ALJ denied Plaintiff's claim.  Tr. 20-37.

_____

19   [1] At the hearing, Plaintiff requested the alleged onset date be amended to December

20   1, 2012, but the decision mentions only the August 2011 onset date.  Tr. 47.

REPORT AND RECOMMENDATION - 6

1    At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

2 not engaged in substantial gainful activity since August 16, 2011, the alleged onset

3 date.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe

4 impairments:  right shoulder tendinosis and bursal tear; sciatica; mild degenerative

5 joint disease of the left knee; morbid obesity; depression; and posttraumatic stress

6 disorder.  Tr. 22.  At step three, the ALJ found Plaintiff does not have an

7 impairment or combination of impairments that meets or medically equals the

8 severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has

9 the RFC to perform less than the full range of light work with the following

10 limitations:

11    She can lift and carry 10 pounds frequently and 20 pounds
    occasionally.  She can stand and walk two of eight hours with normal
12    breaks.  She can sit up to eight of eight hours.  She would need to
    alternate sitting and standing.  She can sit an hour, stand for five
13    minutes, then return to sitting.  She can do so for eight hours without
    leaving her workstation.  She should not perform work that requires
14    operation of foot controls.  She can occasionally climb ramps or stairs.
    She cannot climb ladders, ropes, or scaffolds.  She can occasionally
15    balance, stoop, kneel, crouch, or crawl.  She can do no overhead
    reaching with the right upper extremity.  She would be limited to no
16    exposure to extremes of cold.  She should not be exposed to excessive
    vibration, such as that created by jackhammers.  She should not work
17    around hazards, such as unprotected heights and dangerous
    machinery.  She would be able to remember, understand, and carry
18    out tasks consistent with SVP one or two.

19 Tr. 25.

20

REPORT AND RECOMMENDATION - 7

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 35.  At step five, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier and assembler.  Tr. 36.  Thus, the ALJ concluded Plaintiff has not been under a disability from August 16, 2011, through the date of the decision.  Tr. 36.

On June 14, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-4, making that decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly assessed the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

3. Whether the ALJ properly assessed all of Plaintiff's impairments at step two.

ECF No. 12 at 5.

REPORT AND RECOMMENDATION - 8

1

## DISCUSSION

2

**A.     Medical Opinion Evidence**

3        Plaintiff contends the ALJ improperly rejected the opinion of examining

4  physician Mary Pellicer, M.D., and the opinions of treating providers Michael

5  Garnett, M.D., and Angela Thomas, ARNP.  ECF No. 12 at 15-20.

6         There are three types of physicians: "(1) those who treat the claimant

7  (treating physicians); (2) those who examine but do not treat the claimant

8  (examining physicians); and (3) those who neither examine nor treat the claimant

9  but who review the claimant's file (nonexamining or reviewing physicians)."

10 *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

11 "Generally, a treating physician's opinion carries more weight than an examining

12 physician's, and an examining physician's opinion carries more weight than a

13 reviewing physician's."  *Id*.  "In addition, the regulations give more weight to

14 opinions that are explained than to those that are not, and to the opinions of

15 specialists concerning matters relating to their specialty over that of

16 nonspecialists."  *Id*. (citations omitted).

17        If a treating or examining physician's opinion is uncontradicted, an ALJ may

18 reject it only by offering "clear and convincing reasons that are supported by

19 substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

20 "However, the ALJ need not accept the opinion of any physician, including a

1    treating physician, if that opinion is brief, conclusory and inadequately supported

2    by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

3    (internal quotation marks and brackets omitted).  "If a treating or examining

4    doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

5    reject it by providing specific and legitimate reasons that are supported by

6    substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d

7    821, 830-31 (9th Cir. 1995)).

8         The opinion of an acceptable medical source, such as a physician or

9    psychologist, is given more weight than that of an "other source."  20 C.F.R. §§

10   404.1527, 416.927 (2012);[2] *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

11   "Other sources" include nurse practitioners, physicians' assistants, therapists,

12   teachers, social workers, spouses and other non-medical sources.  20 C.F.R. §§

13   404.1513(d); 416.913(d) (2013).  However, the ALJ is required to "consider

14   _____

15   [2] Some of the regulations cited in this decision were revised effective in March

16   2017.  E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

17   Fed. Reg. 15132 (March 27, 2017) (revising 20 C.F.R. § 404.1527).  Since the

18   revisions were not effective at the time of the ALJ's decision, they does not apply

19   to this case.  For revised regulations, the version effective at the time of the ALJ's

20   decision is noted.

REPORT AND RECOMMENDATION - 10

observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

1.    *Mary Pellicer, M.D.*

In March 2014, Dr. Pellicer examined Plaintiff and made the following assessment:  chronic right shoulder pain secondary to tendinosis and bursal tear; chronic low back and left leg pain and numbness with decreased range of movement secondary to arthritis and sciatica; polycystic ovary syndrome, currently not treated; depression, on medication; recurrent diarrhea and right lower quadrant pain, status post hospitalization with Campylobacter enteritis, needs further GI evaluation to investigate possible diagnosis of Crohn's disease; chronic headaches; intermittent right malleolus pain and swelling secondary to internal derangement exacerbated by overuse; elevated blood pressure, recommend further evaluation. Tr. 349-57.  Dr. Pellicer opined that Plaintiff's functional limitations include: able to stand and walk for two to four hours in an eight-hour day with more frequent breaks due to back pain and sciatica; able to sit for about six hours cumulatively in

an eight-hour day with more frequent breaks due to back pain and sciatica; no

assistive devices are needed but a cane and walker may be helpful at times; capable

of lifting and carrying 10 pounds occasionally with her left hand due to right

shoulder pain and back pain with sciatica; cannot bend, squat, crawl, kneel, or

climb due to right shoulder pain, back pain and sciatica; can only manipulate with

her left hand due to right shoulder pain; able to see, hear, speak, and drive

independently and do all necessary daily self-care activities.  Tr. 355.

The ALJ gave partial weight to Dr. Pellicer's opinion.  Tr. 32.  The ALJ

found the record supports limitations to less than a full range of light work, which

is consistent with Dr. Pellicer's opinion.  Tr. 32.  Because portions of Dr. Pellicer's

opinion were contradicted by the opinion of Robert Hoskins, M.D., a reviewing

physician, Tr. 133-35, the ALJ was required to provide specific and legitimate

reasons for rejecting portions of Dr. Pellicer's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Pellicer's assessment of limitations on Plaintiff's

right hand is not consistent with the record.  Tr. 32.  The consistency of a medical

opinion with the record as a whole is a relevant factor in evaluating a medical

opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v.*

*Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ noted that Plaintiff testified

she can write and type with her right hand and she can drive, feed her pets, care for

chickens, wash dishes, cook, perform personal care, shop for groceries, do laundry,

REPORT AND RECOMMENDATION - 12

1    clean, vacuum, and play card games.  Tr. 32, 54-56, 63, 260-61.  The ALJ

2    concluded it would be reasonable to expect that Plaintiff manipulates with her right

3    hand during those activities.  Tr. 32.  Additionally, the ALJ observed that Dr.

4    Pellicer's testing revealed 5/5 hand grip bilaterally, she could touch her thumb to

5    all fingertips, and she could open a jar and pick up coins from a flat surface.  Tr.

6    32.  Plaintiff cites her own testimony in support of Dr. Pellicer's finding, ECF No.

7    12 at 19 (citing Tr. 63, 65-66), but the ALJ reasonably determined that Plaintiff's

8    symptoms complaints are not fully credible, as discussed *infra*.  The ALJ's finding

9    regarding the manipulative limitation assessed by Dr. Pellicer is based on a

10   reasonable interpretation of the record and is a specific, legitimate, and supported

11   by substantial evidence.

12        Second, the ALJ found the sitting and lifting limitations assessed by Dr.

13   Pellicer are unsupported.  Tr. 32.  An ALJ may discredit treating physicians'

14   opinions that are unsupported by the record as a whole or by objective medical

15   findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

16   2004).  Dr. Pellicer indicated that Plaintiff is limited to sitting for six of eight hours

17   due to back pain and sciatica and she is limited to lifting 10 pounds due to shoulder

18   pain, back pain and sciatica.  Tr. 32, 355.  The ALJ rejected those limitations

19   because Dr. Pellicer supported them by references to symptoms, not findings.  Tr.

20   32.  The ALJ also observed that Dr. Pellicer's testing revealed Plaintiff's shoulder

REPORT AND RECOMMENDATION - 13

1    muscles were 5/5 bilaterally, her knee flexors and extensors were 5/5 bilaterally,

2    and her hips were 4+/5 on the left and 5/5 on the right, suggesting that the sitting

3    and lifting limitations assessed by Dr. Pellicer are not supported by her exam

4    findings.  Tr. 32, 354.

5         Plaintiff observes the ALJ did not discuss Dr. Pellicer's findings of reduced

6    range of motion which Plaintiff contends support the sitting and lifting limitations

7    assessed by Dr. Pellicer.[3]  ECF No. 12 at 19.  While the ALJ faulted Dr. Pellicer's

8    conclusions because she referred to symptoms as the explanation for limitations on

9    sitting and lifting, Plaintiff is correct that at least some degree of those symptoms

10   was demonstrated on exam by limitations in Plaintiff's back and shoulder range of

11   motion.  Tr. 352-54, 356-57.  The ALJ did not discuss Dr. Pellicer's range of

12   motion findings in rejecting the sitting and lifting limitations.  Tr. 32.  The only

_____

14   [3] Plaintiff also contends Dr. Pellicer's finding of a significant limp was overlooked

15   by the ALJ.  ECF No. 12 at 19.  However, the RFC finding regarding standing and

16   walking reasonably accommodates Plaintiff's limp and is consistent with Dr.

17   Pellicer's assessment that Plaintiff could stand and walk for two to four hours in an

18   eight-hour day with more frequent breaks, as the ALJ found Plaintiff can stand and

19   walk for only two of eight hours with normal breaks, with alternate sitting and

20   standing for five minutes every hour.  Tr. 25, 355.

REPORT AND RECOMMENDATION - 14

1    exam findings acknowledged by the ALJ are the results of major muscle group

2    testing, which do not have any obvious bearing on Plaintiff's ability to sit, and

3    have perhaps limited bearing on her ability to lift.  Tr. 32.  The results of range of

4    motion testing are relevant in evaluating Plaintiff's ability to sit or lift and should

5    have been considered alongside the muscle group findings in evaluating Dr.

6    Pellicer's opinion.

7         Further, with respect to the sitting limitation, it is not clear how the ALJ

8    determined an eight-hour sitting limitation is supported by the record, even

9    qualified with five minutes of standing every hour, since both Dr. Pellicer and Dr.

10   Hoskins found that Plaintiff is limited to six hours of sitting in an eight-hour day.

11   Tr. 133, 355.  "The ALJ must do more than offer [her] conclusions.  [S]he must set

12   forth [her] own interpretations and explain why they, rather than the doctors', are

13   correct."  *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).  While the RFC

14   finding is the ALJ's responsibility, not the physician's, s*ee Vertigan v. Halter*, 260

15   F.3d 1044, 1049 (9th Cir. 2001), it must be based on substantial evidence in the

16   record.  The ALJ rejected the sitting limitations assessed by Dr. Pellicer and Dr.

17   Hoskins and neither cited nor discussed any other evidence regarding Plaintiff's

18   ability to sit, so the basis for the eight-hour sitting limitation in the RFC is unclear.

19   An examiner's findings should be as comprehensive and analytical as feasible so

20   that a reviewing court may know the basis for the decision.  *Lewin v. Schweiker*,

1  654 F.2d 631, 635 (9th Cir. 1981).  Here, the ALJ created the sitting limitation

2  without explanation and perhaps without basis in the medical evidence.  Since

3  Plaintiff's ability to sit is integral to the RFC, this matter must be remanded for

4  additional findings.

5  With regard to the 10 pound lifting limitation assessed by Dr. Pellicer, as

6  noted *supra*, the ALJ rejected it based on the major muscle group testing without

7  considering the limitations on range of motion in Plaintiff's back and shoulder.  Tr.

8  32.  Although the RFC lifting restriction of 20 pounds occasionally and 10 pounds

9  frequently is consistent with the lifting restriction assessed by Dr. Hoskins, Tr. 25,

10  133, the ALJ's failure to adequately consider Dr. Pellicer's opinion renders the

11  ALJ's finding regarding lifting questionable.

12  Additionally, it is also noted that the ALJ asserted Dr. Hoskins' opinion was

13  not given full weight because "the claimant is not as limited as opined [by Dr.

14  Hoskins]."  Dr. Hoskins actually opined that Plaintiff's shoulder is more limited,

15  not less limited, than the RFC finding with regard to reaching.  Tr. 25, 134.  The

16  RFC includes a limit of no overhead reaching with the right upper extremity which

17  is consistent with Dr. Hoskins' opinion, but he also indicated Plaintiff is limited in

18  reaching with the right side "in front and/or laterally."  Tr. 25, 134.  The ALJ did

19  not discuss or account for right front or lateral reaching in giving partial weight to

20  Dr. Hoskins' opinion.  On remand, the ALJ should accept or reject the reaching

REPORT AND RECOMMENDATION - 16

1   limitation assessed by Dr. Hoskins as part of reconsideration of the medical

2   opinion evidence.

3          2.      *Angela Thomas, ARNP, and Michael Garnett, M.D.*

4          In December 2014, Ms. Thomas completed a Medical Report form which

5   was co-signed by Dr. Garnett.  Tr. 380-81.  Diagnoses included tendinosis,

6   supraspinatus tendon; colitis; right sciatica; left knee degenerative disease; and

7   polycystic ovarian syndrome (PCOS).  Tr. 380.  The opinion notes treatment with

8   oxycodone and physical therapy for Plaintiff's shoulder and sciatica, probiotics and

9   fiber for colitis, and medication for PCOS, and that Plaintiff would be unable to

10  walk or drive while on oxycodone.  Tr. 380.  It was indicated that work on a

11  regular and continuous basis would cause deterioration in Plaintiff's condition

12  because it could further injure Plaintiff's shoulder, exacerbate sciatica, or increase

13  the progression of Plaintiff's degenerative knee condition.  Tr. 381.  Additionally,

14  the opinion indicates that Plaintiff would likely miss four or more days of work per

15  month because of the need for pain medication, and that work would increase pain.

16  Tr. 381.

17         In September 2015, Ms. Thomas completed another Medical Report form.

18  Tr. 382-83.  The report notes that Plaintiff is currently tapering off oxycodone, but

19  otherwise the opinion is essentially the same as the 2014 opinion.  Tr. 382-83.

20

REPORT AND RECOMMENDATION - 17

The ALJ gave little weight to both opinions.  Tr. 33.  Because Dr. Garnett's 2014 opinion was contradicted by the opinion of Dr. Hoskins, 133-35, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Garnett's opinion.[4]  *Bayliss*, 427 F.3d at 1216.  The ALJ was required to provide germane reasons for rejecting Ms. Thomas' 2015 opinion because she is an "other source" under the regulations.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013); *see Dodrill*, 12 F.3d at 919.  Because the ALJ considered the opinions jointly, the Court also reviews the ALJ's findings concurrently.

First, the ALJ gave the opinions little weight because they are not consistent with the record as a whole.  Tr. 33.  An ALJ may discredit a treating physician's opinions that is unsupported by the record as a whole or by objective medical findings.  *Batson*, 359 F.3d at 1195.  The ALJ did not support this reasoning with

---

[4] The ALJ overlooked or disregarded Dr. Garnett's signature and treated the opinion as the opinion of Ms. Thomas, who is a nurse practitioner and not an acceptable medical source.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).  Although there is no evidence that Dr. Garnett examined Plaintiff, the Court considers the evidence in the light most favorable to the Plaintiff and applies the standard for rejecting the opinion of an acceptable medical source rather than the standard applicable to the opinion of a non-acceptable medical source.

REPORT AND RECOMMENDATION - 18

1   citations to the record or by analysis or consideration of evidence cited elsewhere

2   in the decision.  It is insufficient for the ALJ to reject the opinion of a treating or

3   examining physician by merely stating, without more, that it is inconsistent with

4   other evidence in the record.  *See Embrey*, 849 F.2d at 421.  This is neither a

5   specific, legitimate reason supported by substantial evidence nor a germane reason

6   for rejecting the opinions.

7       Second, the ALJ found the opinions do not reconcile Plaintiff's activities

8   with the limitations assessed.  Tr. 33.  An ALJ may discount a medical source

9   opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v.*

10  *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ noted

11  Plaintiff cares for her three children, including additional care and teaching for her

12  disabled son; she drives a car, shops in stores, cooks, cleans, does laundry,

13  vacuums, washes dishes, performs personal care, feeds her pets, cares for chickens,

14  uses a computer, reads books, manages finances, swims daily, walks for exercise,

15  and goes camping and fishing.  Tr. 33, 54-56, 260-61, 351, 360, 399.  Plaintiff's

16  mother indicated she travels by walking and by car.  Tr. 33, 241.

17      Although Plaintiff contends the ALJ "failed to identify any portion of [these

18  opinions] which was contradicted by these activities," ECF No. 12 at 17, the ALJ

19  noted, for example, that the opinions indicate Plaintiff cannot work or drive while

20  using pain medication, yet Plaintiff performs these activities.  Tr. 33.  The ALJ

REPORT AND RECOMMENDATION - 19

1    reasoned that if Plaintiff is performing them with medication, then the side effects

2    are not as limiting as alleged; if she is performing them without medication, then

3    the pain is not as limiting as alleged. Tr. 33-34. Plaintiff references her testimony

4    that she does not drive after taking pain medication because of side effects, ECF

5    No. 12 at 17 (citing Tr. 50, 59, 63-64), and argues that Plaintiff "has

6    responsibilities which she must accomplish" despite her pain, and if she "must

7    sometimes avoid taking pain medications so that she can drive, this does not show

8    that her pain is less severe." ECF No. 12 at 18. Notwithstanding, the ALJ

9    reasonably concluded that Plaintiff's ability to drive, read books, walk and swim

10   indicates Plaintiff can function either with or without medication.

11        Third, the ALJ found that because Ms. Thomas is a nurse practitioner and

12   not an acceptable medical source, her opinion is less persuasive. Tr. 34. The ALJ

13   is correct that Ms. Thomas' opinion is entitled to less weight than that of an

14   acceptable medical source. 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez*, 74

15   F.3d at 970-71. However, Ms. Thomas' credentials are not a germane reason for

16   rejecting the opinion because ALJs are directed to consider medical evidence from

17   all sources. 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2) (2013).

18        Two out of three reasons given by the ALJ for rejecting the opinions of Dr.

19   Garnett and Ms. Thomas are legally insufficient. The only remaining reason

20   involves interpretation of Plaintiff's daily activities. Since this matter is remanded

REPORT AND RECOMMENDATION - 20

on other grounds, and in light of the insufficiencies in the ALJ's decision, on

remand the ALJ should reconsider all of the medical opinion evidence including

the opinions of Dr. Garnett and Ms. Thomas.

**B.    Symptom Complaints**

Plaintiff contends the ALJ improperly evaluated her symptom complaints.

ECF No. 12 at 6-15.  An ALJ engages in a two-step analysis to determine whether

a claimant's testimony regarding subjective pain or symptoms is credible.  "First,

the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks

omitted).  "The claimant is not required to show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she

need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the

REPORT AND RECOMMENDATION - 21

1  ALJ must identify what testimony is not credible and what evidence undermines

2  the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834; *see also Thomas v.*

3  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

4  determination with findings sufficiently specific to permit the court to conclude

5  that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

6  convincing [evidence] standard is the most demanding required in Social Security

7  cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (quoting *Moore v. Comm'r of Soc.*

8  *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

9         In assessing a claimant's symptom complaints, the ALJ may consider, *inter*

10 *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

11 claimant's testimony or between her testimony and her conduct; (3) the claimant's

12 daily living activities; (4) the claimant's work record; and (5) testimony from

13 physicians or third parties concerning the nature, severity, and effect of the

14 claimant's condition.  *Thomas*, 278 F.3d at 958-59.

15        This Court finds that the ALJ provided several specific, clear, and

16 convincing reasons for finding Plaintiff's statements concerning the intensity,

17 persistence, and limiting effects of her symptoms not credible.  Tr. 27-31.

18        First, the ALJ found Plaintiff's daily activities are more involved than

19 expected and indicate Plaintiff's functional limitations are not as significant as

20 alleged.  Tr. 30-31.  It is reasonable for an ALJ to consider a claimant's activities

REPORT AND RECOMMENDATION - 22

1  which undermine claims of totally disabling pain in making the credibility

2  determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

3  However, it is well-established that a claimant need not "vegetate in a dark room"

4  in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561

5  (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part

6  of her day engaged in pursuits involving the performance of physical functions that

7  are transferable to a work setting, a specific finding as to this fact may be sufficient

8  to discredit an allegation of disabling excess pain.  *Fair v. Bowen,* 885 F.2d 597,

9  603 (9th Cir. 1989).  However, "[e]ven where [Plaintiff's daily] activities suggest

10  some difficulty functioning, they may be grounds for discrediting the claimant's

11  testimony to the extent that they contradict claims of a totally debilitating

12  impairment."  *Molina*, 674 F.3d at 1113.

13        The ALJ noted that Plaintiff testified all she does on a typical day is shower

14  and try to keep up the house, but observed Plaintiff's daily activities are "quite

15  involved."  Tr. 30-31, 54.  For example, she spends three to five hours performing

16  household chores such as laundry, cooking, vacuuming, and taking out the garbage

17  without help or encouragement.  Tr. 30, 260.  She described herself as a "neat

18  freak" and cleans, does dishes, and makes her bed.  Tr. 30, 360.  She goes outside

19  daily, she drives, shops in stores for five hours once a month and pays bills and

20  does budgeting.  Tr. 30, 261, 360.  Plaintiff bakes and cooks all of the meals for

REPORT AND RECOMMENDATION - 23

1    her family and swims every day.  Tr. 30, 399.  She takes care of her children, one

2    of whom is mildly mentally disabled, and camps, plays games, and goes fishing.

3    Tr. 30, 55, 262, 351.  She takes care of chickens.  Tr. 360.  She is involved in

4    social activities at her children's school.  Tr. 30, 360.  The ALJ also noted Plaintiff

5    swims and walks for exercise, Tr. 392, 397, 399, and found that suggests she is

6    able to use her left leg and right arm more than she testified.  Tr. 31, 57-59.  The

7    ALJ reasonably found the inconsistency between Plaintiff's testimony and

8    evidence of her daily activities weakens the credibility of her allegations.  Tr. 31.

9         Plaintiff contends the ALJ failed to account for the qualifications that

10   modified her description of some of her daily activities, such as that she rests while

11   cooking and cleaning or works in smaller increments of time.  ECF No. 12 at 8

12   (citing Tr. 259-60).  As noted *supra*, even if some difficulty functioning is

13   established in the record, a claimant's activities may undermine her symptom

14   complaints if they contradict her claim of a totally debilitating impairment.

15   *Molina*, 674 F.3d at 1113.  Plaintiff notes that the ALJ mentioned activities like

16   fishing and hunting "yet omitted that [Plaintiff] stated [in December 2013] she can

17   no longer perform these activities."  ECF No. 12 at 9 (citing Tr. 262).  However, in

18   March 2014, Plaintiff told Dr. Pellicer that "[h]er hobbies are hiking and hunting

19   but she can't do them anymore.  For fun she camps, play[s] games and goes

20   fishing."  Tr. 351.  The same month she told Elsa Halomen, M.D., an examining

REPORT AND RECOMMENDATION - 24

psychiatrist, that her hobbies include camping, fishing, and hunting without qualifiers.  Tr. 360.  A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals.  Social Security Ruling (S.S.R.) 96-7p.  The ALJ reasonably interpreted this evidence and found Plaintiff's reported activities are inconsistent with the level of impairment suggested by her allegations.

Plaintiff also contends the ALJ erred by determining swimming is inconsistent with her allegations, suggesting it was under "instructions from her doctors" that she do so.  ECF No. 12 at 10.  Even if Plaintiff was instructed to swim by medical providers (and there is no evidence in the record so indicating),[5]

_____

[5] The "swimming evidence" consists of the following:  Plaintiff told her provider that "she has degenerative joint disease and it is difficult for her to exercise" and reported she swims daily.  Tr. 399.  She also reported she had been increasing her activity "which is mostly swimming and walking," Tr. 397, and she was "swimming daily for activity."  Tr. 392.  Plaintiff is commended for exercising and losing weight, but the ALJ's finding that her testimony about her shoulder limitation is inconsistent with swimming is a reasonable interpretation of the record.

REPORT AND RECOMMENDATION - 25

the ALJ's finding that swimming is inconsistent with Plaintiff's testimony that she can only lift her arm halfway to her shoulder is reasonable. Tr. 27 ("she finds it hard to lift her arm to shoulder level"), Tr. 31 ("[h]er ability to swim . . . suggests she is able to use her left leg and right arm more than she testified to at the hearing"), Tr. 58.

Second, the ALJ found Plaintiff's medical treatment record reflects conservative and routine treatment. Tr. 31. Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 -40 (9th Cir. 2008); *see also Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). The ALJ noted Plaintiff has not been hospitalized for psychiatric reasons; she does not engage in mental health counseling; she has not engaged in physical therapy; and she has not engaged in vocational rehabilitation. Tr. 31. The ALJ also found the medications she takes are not consistent with the alleged severity of her impairments. Tr. 31.

REPORT AND RECOMMENDATION - 26

1    Plaintiff asserts her insurance coverage was a barrier to treatment, noting a

2  lumbar MRI was denied, Tr. 342, insurance would not cover PCOS medications,

3  Tr. 350, and that an office visit was delayed due to lack of insurance, Tr. 348. ECF

4  No. 12 at 11. However, an MRI is a diagnostic tool, not treatment, and the ALJ

5  did not suggest that Plaintiff did not seek frequent office visits. Plaintiff's

6  statement that insurance would not cover PCOS medications actually supports the

7  ALJ's point that conservative treatment was adequate. "She was on a hormone pill

8  for about a year and stopped when she lost her insurance. The meds didn't seem to

9  help in the year she was on it. Her symptoms are basically the same; is not having

10  pain." Tr. 350.

11    Plaintiff also contends physical therapy worsened her pain and she was

12  unable to get to physical therapy. ECF No. 12 at 12 (citing Tr. 31, 62, 372).

13  However, there are no records indicating any attendance at physical therapy, and

14  the record cited by Plaintiff actually states she "opted not to do PT" because she

15  lived a distance from the clinic. Tr. 372. Furthermore, even if she could not

16  attend, physical therapy is reasonably categorized as conservative treatment, *see*

17  *Tommasetti,* 533 F.3d at 1039–40 (classifying physical therapy and anti-

18  inflammatory medication, nerve stimulation, and a lumbosacral corset as

19  conservative treatment for allegedly debilitating back pain).

20

REPORT AND RECOMMENDATION - 27

1      Lastly, Plaintiff is to be commended for exercising by swimming, but the

2  contention that it was encouraged by her providers because "[s]he could not

3  perform weight bearing exercises" is unsupported by the record.  ECF No. 12 at

4  12.  It is possible and even likely that Plaintiff was encouraged to swim for

5  exercise even though it is not noted in the record, but such encouragement supports

6  rather than detracts from the ALJ's finding regarding conservative treatment.  If

7  Plaintiff's medical providers were not concerned that swimming would exacerbate

8  her shoulder problem, it is reasonable to infer that her shoulder limitations are not

9  as significant as alleged.

10      Third, the ALJ found the evidence suggests Plaintiff is not motivated to

11  work.  Tr. 31.  The claimant's work record is an appropriate consideration in

12  weighing the claimant's credibility.  *Thomas*, 278 F.3d at 958-59; 20 C.F.R. §§

13  404.1529(c)(3), 416.929(c)(3) (2011).  An ALJ may draw reasonable inferences

14  regarding a claimant's motivation to work.  *See Tommasetti*, 533 F.3d at 1040.

15  Notwithstanding, Plaintiff contends her remote work history "has no bearing on

16  [Plaintiff's] current level of functioning."  ECF No. 12 at 12-13.  The ALJ noted

17  Plaintiff has a "limited and sporadic" work history with limited earnings before the

18  alleged onset of disability.  Tr. 31.  The ALJ observed Plaintiff had no earnings for

19  three years (1996, 1998, and 2003) and very low earnings in three years (1997,

20  2002, and 2008).  Tr. 31, 222.  Plaintiff earned slightly more but still less than

REPORT AND RECOMMENDATION - 28

1  substantial gainful activity in two additional years (2009, 2011).  Tr. 222.  The ALJ

2  observed Plaintiff worked at a level of substantial gainful activity for only five

3  years (2001, 2004, 2005, 2006, and 2010) between 1996 and 2011.  Tr. 31, 222.

4  The ALJ reasonably concluded that factors other than Plaintiff's alleged

5  impairments affect her ability to maintain employment, and that although she was

6  able to engage in substantial gainful activity in the past, she did not do it

7  consistently.  Tr. 31.  Thus, Plaintiff's remote work history reasonably leads to the

8  conclusion that Plaintiff is not particularly motivated to work consistently.  The

9  ALJ's interpretation of the record is reasonable and based on the evidence.

10       Fourth, the ALJ found Plaintiff left her previous employment for reasons

11  unrelated to her disability.  Tr. 31.  An ALJ may consider that a claimant stopped

12  working for reasons unrelated to the allegedly disabling condition in making a

13  credibility determination.  *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*,

14  268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted Plaintiff stopped working

15  because she was laid off from her job as an assistant teacher at a Head Start school

16  due to budget cuts.  Tr. 31, 230, 359.  Plaintiff contends the ALJ failed to

17  recognize that she amended her alleged onset date to December 2012, more than a

18  year after her initial alleged onset date and date of last employment in August

19  2011.  ECF No. 12 at 13.  Regardless of the timing of her alleged onset date, the

20

REPORT AND RECOMMENDATION - 29

1  ALJ reasonably considered that her last employment ended for reasons other than

2  her alleged disability.

3  　　　　Fifth, the ALJ found the objective findings conflict with Plaintiff's symptom

4  complaints.  Tr. 34.  An ALJ may not discredit a claimant's pain testimony and

5  deny benefits solely because the degree of pain alleged is not supported by

6  objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d

7  341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical

8  evidence is a relevant factor in determining the severity of a claimant's pain and its

9  disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

10  416.929(c)(2) (2011).  Minimal objective evidence is a factor which may be relied

11  upon in discrediting a claimant's testimony, although it may not be the only factor.

12  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

13  　　　　The ALJ noted that despite Plaintiff's complaints of numbness and pain in

14  her lower extremities, on examination in November 2014 Plaintiff demonstrated

15  equal and adequate deep tendon reflexes in her upper and lower extremities,

16  sensation was intact, pain was not reproduced on palpation to spine or spinous

17  muscles, spinal range of motion was full and without increased pain, although

18  there was some decreased range of motion in the lower left extremity.  Tr. 408-09.

19  Although Plaintiff contends the ALJ selectively cited only one contradiction in the

20  record, ECF No. 12 at 14, the ALJ also noted imaging of Plaintiff's left hip was

REPORT AND RECOMMENDATION - 30

1  normal and her left knee showed only mild degenerative joint disease.  Tr. 35, 365-

2  66.  Additionally, an ultrasound showed the arterial supply to the left lower

3  extremity is normal.  Tr. 364.  The ALJ observed Plaintiff told Dr. Pellicer she

4  sometimes uses a walker because the pain is so bad, but there is no basis for a

5  walker in the medical record.[6]  Tr. 28, 35, 349.  Dr. Pellicer found reduced range of

6  motion in Plaintiff's back, hips, knees, and shoulders, but later exams found

7  largely normal range of motion.  Tr. 35, 352-53, 373, 399-400.  The ALJ also

8  noted that Plaintiff reported that she swims and walks for exercise, which suggests

9  she is able to use her left leg and right arm more than she testified to at the hearing.

10  Tr. 35, 57-59, 392, 397, 399.  Based on the foregoing, the ALJ reasonably found

11  Plaintiff's symptom complaints are out of proportion to the medical evidence in

12  evaluating her testimony.  Tr. 34.

13  **C.    Step Two**

14       Plaintiff contends the ALJ erred by finding her gastrointestinal impairments

15  are not severe impairments.  ECF No. 12 at 5-6.  At step two of the sequential

16  process, the ALJ must determine whether Plaintiff suffers from a "severe"

17  impairment, i.e., one that significantly limits his or her physical or mental ability to

18  _____

19  [6] It is noted that Dr. Pellicer opined a walker or cane may be helpful at times.  Tr.

20  355.  Since this matter must be remanded, any error on this issue is moot.

REPORT AND RECOMMENDATION - 31

1    do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  To show a severe

2    impairment, the claimant must first prove there is a medically determinable

3    impairment which is a physical or mental impairment established by medical

4    evidence consisting of signs, symptoms, and laboratory findings; the claimant's

5    own statement of symptoms alone will not suffice.  20 C.F.R. §§404.1508, 416.908

6    (1991).

7          If a medically determinable impairment is established, the claimant's

8    allegations about the intensity and persistence of the symptoms must be considered

9    with the objective medical evidence in evaluating the functionally limiting effects

10   of the impairment; i.e., in determining whether the impairment is a "severe"

11   impairment under the regulations.  S.S.R. 96–4p.  "Step two is merely a threshold

12   determination meant to screen out weak claims.  It is not meant to identify the

13   impairments that should be taken into account when determining the RFC."  *Buck*

14   *v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citation omitted).  The fact

15   that a medically determinable condition exists does not automatically mean the

16   symptoms are "severe" or "disabling" as defined by the Social Security

17   regulations.  *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v.*

18   *Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

19         The ALJ noted evidence indicating that Plaintiff has a history of Crohn's

20   disease and diarrhea, but found there is no record evidence of any severe issue

REPORT AND RECOMMENDATION - 32

1    from that condition.  Tr. 23.  Plaintiff contends the ALJ should have found Crohn's

2    disease, colitis, and diarrhea are severe impairments.  ECF No. 12 at 5-6.

3        The evidence of Plaintiff's gastrointestinal impairments is notably slim.  On

4    November 7, 2013, Plaintiff went to the emergency room and was admitted

5    overnight after several days of loose, nonbloody diarrheal stool, followed by

6    vomiting and fever.  Tr. 317.  On exam of her abdomen, the emergency room

7    doctor noted tenderness in Plaintiff's right lower quadrant with normal bowel

8    tones, no masses, rebound tenderness or guarding.  Tr. 317.  A CT of her abdomen

9    and pelvis showed thickening of the terminal ileum with inflammation of the

10   mesentery, and Crohn's disease or infectious ileitis were considered.  Tr. 319.  She

11   was assessed with acute ileitis, fever, dehydration, and ureteral lithiasis.  Tr. 319-

12   20.  On discharge, she was noted to have made rapid improvement in her status and

13   was directed to avoid dairy for two to four weeks, start an over-the-counter

14   probiotic supplement, and complete a course of antibiotics.  Tr. 319; *see also* Tr.

15   315-38.

16       A few week later, on November 25, 2013, Plaintiff saw Dawn Sexton, PA-C,

17   for follow up and to address ear pain.  Tr. 339.  She had finished her antibiotics

18   and was in no obvious distress.  Tr. 339.  Ms. Sexton assessed diarrhea and

19   Eustachian tube dysfunction.  Tr. 339.  Ms. Sexton recommended a colonoscopy

20

REPORT AND RECOMMENDATION - 33

1  consult to rule out or rule in Crohn's disease.  Tr. 339.  There is no evidence a

2  colonoscopy was ever done.

3         At the consultative exam with Dr. Pellicer in March 2014, Plaintiff reported

4  she was "diagnosed" with Crohn's disease based on the workup during the

5  emergency room visit in November 2013.  Tr. 350.  She stated she "has always had

6  very loose stools and diarrhea, worse for the last 3 years.  She also gets pain in her

7  right lower abdomen about 3 times a week."  Tr. 350.  She was being treated with

8  senna and fiber.  Tr. 350.  On exam, Dr. Pellicer found she was slightly tender in

9  the right lower quadrant without masses.  Tr. 351-52.  Dr. Pellicer's clinical

10  impression included recurrent diarrhea and right lower quadrant pain, status post

11  hospitalization with Campylobacter enteritis and noted, "[n]eeds further GI

12  evaluation to investigate a possible diagnosis of Crohn's disease."  Tr. 355.

13  Notably, Dr. Pellicer did not assess any limitations attributable to Crohn's disease

14  in her functional findings.  Tr. 355.

15         At a gynecological visit in April 2015, Plaintiff reported a history of Crohn's

16  disease diagnosed by colonoscopy and biopsy.  Tr. 387.  She had never taken

17  steroids or other immunomodulators.  Tr. 387.  She reported Crohn's was managed

18  by her primary care provider and she had eliminated dairy.  Tr. 387.

19         On December 17, 2014 and September 16, 2015, treating provider Angela

20  Thomas, ARNP, noted on review of systems that Plaintiff reported diarrhea,

REPORT AND RECOMMENDATION - 34

constipation, and abdominal pain, Tr. 395, 406.  On those same dates, Ms. Thomas completed Medical Report forms listing colitis as a diagnosis with symptoms of abdominal pain, diarrhea, and constipation.  Tr. 380, 382.  Ms. Thomas noted the condition had been treated with probiotics and fiber and that it is a chronic problem.  Tr. 380-83.  When asked whether work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, Ms. Thomas indicated that it would, but referenced Plaintiff's shoulder issue, sciatica, and degenerative joint disease, not colitis.  Tr. 381, 383.

The foregoing are the only significant mentions of Crohn's, diarrhea, or colitis in the medical record.

Plaintiff testified that Crohn's disease was diagnosed by colonoscopy at a hospital, but it was noted by the ALJ and Plaintiff's attorney that there is no documentation of a colonoscopy in the hospital records.  Tr. 60.  Plaintiff testified she has "continuous diarrhea.  If it's not diarrhea, it's constipation and continuous stomach pain on my right."  Tr. 61.  For treatment, she eats more fiber and takes a probiotic.  Tr. 61.  She testified that she has pain and diarrhea all day for two to three days every week.  Tr. 68.  On those days, she spends more than half the day in the bathroom.  Tr. 68.  Plaintiff testified that if she had to work at a simple light duty job, "[t]here's no way I could work through it" and she would "mess her pants."  Tr. 69.

REPORT AND RECOMMENDATION - 35

1    The ALJ noted the evidence of Plaintiff's hospitalization due to diarrhea and

2    her follow up visit with Ms. Sexton and found, "[t]he records do not indicate any

3    severe issues as to Crohn's disease."  Tr. 23.  Plaintiff contends the ALJ "fails to

4    recognize that these symptoms did not resolve and that they continue to cause

5    severe limitations."  ECF No. 12 at 6.  Plaintiff cites her report to Dr. Pellicer and

6    the forms completed by Ms. Thomas to support of her assertion that she

7    experiences continuous limitations.  ECF No. 12 at 6 (citing Tr. 350, 352, 355,

8    380-83, 395, 406).  She also cites her own testimony about limitations, noting that

9    while the ALJ found Plaintiff's symptoms complaints not fully credible, the ALJ

10   did not specifically discredit her testimony about her abdominal and diarrhea

11   symptoms.  ECF No. 12 at 6 (citing Tr. 26-35).

12   Defendant contends errors regarding particular impairments are not

13   prejudicial at step two where step two was resolved in the claimant's favor.  ECF

14   No. 16 at 3 (citing *Buck*, 869 F.3d at 1049).  Indeed, if the ALJ erred by not finding

15   an impairment severe at step two, reversal may not be required if the step is

16   resolved in the claimant's favor.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454

17   F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at 682.  Assuming for the sake

18   argument that the ALJ should have found a gastrointestinal impairment to be a

19   severe impairment, any error at step two would be harmless because the ALJ found

20

REPORT AND RECOMMENDATION - 36

other severe impairments exist and continued the sequential evaluation. *See Burch*, 400 F.3d at 682.

Notwithstanding, the ALJ is required to consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in assessing the RFC. S.S.R. 96-8p. The ALJ noted Plaintiff's allegations that she is unable to work in part due to colitis and Crohn's disease, Tr. 229, and that she is frequently sick from Crohn's disease, Tr. 258. Tr. 26. The ALJ also noted Plaintiff's testimony regarding continuous diarrhea, except when she is constipated, and that she has continuous stomach pain. Tr. 27. However, the ALJ did not discuss Plaintiff's gastrointestinal symptoms or the consideration given to them in evaluating Plaintiff's symptom complaints or assessing the RFC. Since this matter is remanded on other grounds, the ALJ should ensure that Plaintiff's testimony and complaints regarding her gastrointestinal symptoms are addressed in a manner that makes clear they were given sufficient consideration.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 16, be DENIED.

1      3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and

2  REMANDING the matter to the Commissioner of Social Security for further

3  proceedings consistent with this recommendation pursuant to sentence four of 42

4  U.S.C. § 405(g).

5  <center>**OBJECTIONS**</center>

6      Any party may object to a magistrate judge's proposed findings,

7  recommendations or report within **fourteen (14)** days following service with a

8  copy thereof.  Such party shall file written objections with the Clerk of the Court

9  and serve objections on all parties, specifically identifying the portions to which

10 objection is being made, and the basis therefor.  Any response to the objection

11 shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

12 directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of

13 service.

14     A district judge will make a *de novo* determination of those portions to

15 which objection is made and may accept, reject or modify the magistrate judge's

16 determination.  The judge need not conduct a new hearing or hear arguments and

17 may consider the magistrate judge's record and make an independent

18 determination thereon.  The judge may, but is not required to, accept or consider

19 additional evidence, or may recommit the matter to the magistrate judge with

20 instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

REPORT AND RECOMMENDATION - 38

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED September 14, 2018.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 39